RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0395p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

KEVIN MOORE,

        *Petitioner-Appellant*,

      *v.*

MARY BERGHUIS, Warden,

        *Respondent-Appellee*.

No. 09-2011

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:07-cv-14564—Denise Page Hood, District Judge.

Decided and Filed:  November 30, 2012

Before:  KEITH, MARTIN, and BOGGS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** David A. Castleman, Kathleen M. Cochrane, SULLIVAN & CROMWELL LLP, New York, New York, for Appellant.  Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

    MARTIN, J., delivered the opinion of the court in which KEITH, J., joined. BOGGS, J. (pp. 11–13), delivered a separate dissenting opinion.

_____

**OPINION**

_____

    BOYCE F. MARTIN, JR., Circuit Judge.  Kevin Moore appeals the district court's order denying his petition for a writ of habeas corpus filed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.  Following a jury trial in Michigan court, Moore was convicted of first-degree premeditated murder, being a felon in possession of a firearm, and possession of a firearm in the commission of a felony.  He was sentenced to life imprisonment, three to five years imprisonment,

and two years imprisonment for the charges, respectively. His conviction was affirmed on appeal, and the Michigan courts denied his post-conviction motion for relief from judgment. Moore filed a petition for a writ of habeas corpus in the district court. He argued that the admission of a statement that he made while in police custody, after requesting counsel, violated his constitutional right to remain silent. The district court denied his petition. Moore appeals. For the following reasons, we **REVERSE** the judgment of the district court and **GRANT** the petition.

I.

Moore was convicted of first-degree premeditated murder, being a felon in possession of a firearm, and possession of a firearm in the commission of a felony related to the homicide of Hyshanti Johns, a twenty-year-old woman, who died after she was shot multiple times with a shotgun. The district court, *Moore v. Bell*, No. 2:07-CV-14564, 2009 WL 1803192, *1 (E.D. Mich. June 23, 2009) (quoting *People v. Moore*, No. 236015, 2003 WL 21419275, *1-2 (Mich. Ct. App. June 19, 2003)), recited the relevant facts:

> Here, the evidence indicated that [Moore] took a shotgun with him when he drove away with the decedent. He disposed of the weapon and the van after the decedent was shot, and also left town. He told different versions of the killing to his girlfriend and to the police, claiming that he either shot the decedent because she was a witness to another crime or that she attempted to rob him and he shot her in "self-defense" as she was running away. The evidence disclosed, however, that the decedent was shot four times by a shotgun, twice in the back and twice in the front of her body, and possibly a fifth time resulting in a grazing wound. The shotgun had to be pumped between each shot.

Moore voluntarily turned himself in to the Detroit police in connection with the homicide of Johns. Upon turning himself in, Moore was taken by a police officer to a room in the police station. The trial court found at a pre-trial hearing that:

> [Moore then] asked the [officer] to call a number on the reverse of a business card, which was an attorney's business card. [The officer] called that number and received an answering service for that attorney. Upon doing that, he came back and told [Moore] that he was unable to get an answer except for an answering service for this attorney. [The

trial court] determined that would have been an initial request for an attorney, however, subsequently during the time that [the officer] was with [Moore], [Moore] indicated he did want to make a statement. He signed an acknowledgment and waiver of rights form, and [the court found] that his rights were knowingly waived. [The officer then questioned Moore, and Moore made an incriminating statement in which he confessed to shooting Johns.] There was no other indication given by [Moore] to [the officer] that he wanted an attorney before making a statement, or at any time during the interrogation[. A]t no time did [Moore] ask to stop the interrogation and again attempt to invoke his rights to have an attorney during the interrogation . . . . There was no clear request for an attorney after . . . Moore was advised that his attorney was not available when [the officer] made the first call.

Before trial, Moore moved to suppress the incriminating custodial statement he made to the officer after requesting an attorney. The trial court held a hearing and denied Moore's motion to suppress the statement, finding that Moore had made an initial request for an attorney and was not provided with one, but that he then waived his rights by agreeing to make a custodial statement and by not repeating his request for counsel after the start of questioning. The case proceeded to a jury trial, where the custodial statement was read aloud into the record by the police officer who had questioned him over Moore's objections. Moore was convicted on the three charges.

Moore's conviction was affirmed on appeal by the Michigan Court of Appeals. In summarizing the trial court's finding, the Michigan Court of Appeals stated that, "although defendant initially requested counsel, the challenged statement was made only after defendant initiated further conversation with the police"; the state appellate court found "no clear error in this factual determination." *People v. Moore*, 2003 WL 21419275, at *3. The Michigan Supreme Court denied Moore leave to appeal. He then filed a motion for post-conviction relief from judgment, which the state trial court denied. Moore filed an application for leave to file a delayed appeal. The Michigan Court of Appeals and Michigan Supreme Court both denied his application for leave to appeal.

Moore then filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan in October 2007. Moore included in

this petition a claim that his constitutional rights were violated when the trial court admitted into evidence the statement he made while in police custody, after requesting an attorney, without an attorney present, and without waiving his right to counsel. The district court found: (1) that Moore "most likely invoked his right to counsel by giving [the officer] the name and telephone number of his attorney and asking [the officer] to call her;" (2) that, after requesting an attorney, it is "unclear whether it was [the officer] or [Moore] who reinitiated the subsequent conversation," and that "the Michigan courts may have erred in finding that it was [Moore], and not the officer, who reinitiated the interrogation after [Moore] had invoked his right to counsel;" and (3) the "troublesome" fact that the officer then "clearly began asking questions of [Moore] to see if he wished to make an incriminating statement." *Moore*, 2009 WL 1803192, at *10. However, the district court denied Moore's petition, finding that Moore "is unable to show how he was prejudiced . . . because his confession that he shot the victim was duplicative of other evidence that was introduced in this case, including testimony from [Moore]'s girlfriend that he admitted shooting the victim to her, as well as Angelene Doss' testimony that she observed the victim and [Moore] leaving her apartment together on the morning of the murder, while [Moore] was armed with a shotgun." *Id.* at *11.

Moore appeals the district court's denial of his petition for a writ of habeas corpus. Moore argues that his petition should be granted because the police interrogation following his request for counsel violated his Fifth and Fourteenth Amendment rights to counsel, and that the trial court's denial of his motion to suppress his custodial statement was contrary to clearly established federal law.

## II.

We review the district court's legal conclusions in a habeas proceeding de novo and we review its factual findings under the clear-error standard. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (en banc). We review the district court's denial of Moore's petition for a writ of habeas corpus pursuant to the standards of review as set forth in the Antiterrorism and Effective Death Penalty Act of 1996. *See Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). This Court has held, *Black v. Bell*, 664 F.3d 81,

90–91 (6th Cir. 2011) (alterations, citations, and internal quotation marks omitted), that under the Act:

> [A] federal court may grant a writ of habeas corpus with respect to a claim that was adjudicated on the merits in state court proceedings if the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] . . . [or] if the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . . A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.

We have further held that a state court's decision is an "unreasonable application of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case, or if it either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Id.* at 91 (citations and internal quotation marks omitted). Under the Act, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011).

### III.

The Fifth and Fourteenth Amendments guarantee a right against self-incrimination in criminal cases, and this right includes a right to counsel during custodial interrogation. *McKinney v. Ludwick*, 649 F.3d 484, 488–90 (6th Cir. 2011) (summarizing United States Supreme Court case law regarding the right to counsel and waiver of this right). "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). The Supreme Court, *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981), has further defined an accused's right to counsel as follows:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights . . . . [A]n accused, such as [defendant], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

As we have stated previously, "[i]n other words, after an individual asks for counsel during interrogation, the government cannot demonstrate a valid waiver of this right absent the necessary fact that the accused, not the police, reopened the dialogue with the authorities . . . by evincing a willingness and a desire for a generalized discussion about the investigation." *McKinney*, 649 F.3d at 489 (alterations, citation, and internal quotation marks omitted).

The Michigan courts adjudicated on the merits Moore's claim that the admission of his custodial statement violated his right to counsel. Therefore, we review the district court's denial of Moore's petition under the additional standards required by the Antiterrorism and Effective Death Penalty Act.

A.      Invoking the Right to Counsel

We agree with both the trial court and the district court that, after being taken into custody, Moore invoked his constitutional right to counsel by requesting that the police officer call his attorney's phone number. *See Abela v. Martin*, 380 F.3d 915, 926 (6th Cir. 2004) (citing *Davis v. United States*, 512 U.S. 452 (1994)) (finding the accused "clearly and unequivocally invoke[d] the right to counsel" when he said "[m]aybe I should talk to an attorney" and showed the officer his attorney's business card).

B.      Waiving the Right to Counsel

An accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution establishes that he "in fact knowingly and voluntarily waived" his *Miranda* rights when he made the statement. *Berghuis v. Thompkins*, 130 S. Ct. 2250,

2260 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)) (internal quotation marks omitted). A waiver inquiry has "two distinct dimensions": waiver must have been "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and it must have been "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "By its very nature, custodial police interrogation entails inherently compelling pressures" that "can induce a frighteningly high percentage of people to confess to crimes they never committed." *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2401 (2011) (citations and internal quotation marks omitted). The state bears the burden of establishing a waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (noting that a preponderance of the evidence standard applies to waivers of the right to counsel and the right to remain silent). We find that Moore did not waive his right to counsel.

In order to demonstrate that Moore waived his asserted right to counsel and was therefore "not subject to further interrogation by the authorities until counsel [was] made available to him," the government must have shown that Moore "himself initiate[d] further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85; *McKinney*, 649 F.3d at 489. Though the Supreme Court in *Thompkins* recently addressed the issue of waiver of *Miranda* rights, we do not read *Thompkins*'s waiver analysis to alter the *Edwards* rule regarding waiver of the right to counsel. In *Thompkins*, the Court did not alter, or even speak to, the *Edwards* analysis regarding the waiver of the right to counsel; instead, *Thompkins* clarifies the waiver analysis for the right to remain silent. *See Thompkins*, 130 S. Ct. at 2275 (Sotomayor, J., dissenting) (noting that the Supreme Court necessarily treats both the invocation and waiver of the right to remain silent and the right to counsel distinctly, and stating that "*Miranda* itself distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney" (internal quotation marks omitted)).

After calling the phone number of Moore's attorney, the police officer returned and informed Moore that his attempt to contact the attorney was unsuccessful. According to testimony given by the officer at the suppression hearing, "at that time [the officer] asked [Moore] did he want to talk to [the officer] and [Moore] said yes he did." The officer testified that he then had Moore sign a form waiving his constitutional rights, and "asked [Moore] could he tell [the officer] about . . . the fatal shooting of Hyshanti Johns and at that time [Moore] gave [the officer] a narrative of what happened." At the same hearing, Moore testified that he asked the officer for an attorney "probably three or four times," including once immediately before the questioning began. Moore also testified that after he had refused to make a statement without counsel present, the officer initiated an extended conversation with him about Moore's father, religion, and potential witnesses. Following this discussion, Moore agreed to make a statement. Based on this and other testimony, the trial court found that, because "[Moore] indicated he did want to make a statement," "signed an acknowledgment and waiver of rights form," and made no additional request for an attorney, Moore had waived his right to counsel. The trial court did not make a finding on whether Moore or the officer initiated further communication following Moore's request for counsel. The Michigan Court of Appeals affirmed, finding that Moore had initiated further conversation with the officer.

Under the review required by the Antiterrorism and Effective Death Penalty Act, a state court's decision is an "unreasonable application of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Black*, 664 F.3d at 91 (internal quotation marks omitted). The Michigan courts erred in concluding that Moore waived his right to counsel. The government did not show by a preponderance of the evidence, and the Michigan trial court did not clearly find, that Moore, and not the officer, initiated further conversation. In fact, the hearing testimony from both witnesses indicates that the officer reinitiated communication with Moore following Moore's request for counsel, and that the officer explicitly asked Moore to tell him about the shooting. Although the Michigan Court of Appeals correctly cited the governing rule of *Edwards*, the state court unreasonably applied *Edwards* to the facts of Moore's case in finding that Moore had

waived his right to counsel. The Michigan Court of Appeals unreasonably applied *Edwards* here by finding a waiver absent a factual finding by the trial court—and despite testimonial evidence to the contrary—that Moore, not the officer, had reinitiated communications, *see Edwards*, 451 U.S. at 485, and by not finding it to be error that the trial court effectively required that Moore assert his right to counsel a second time in order to secure it. The state court's denial of Moore's motion to suppress his custodial statement was therefore an unreasonable application of clearly established federal law.

C.        Harmless Error Analysis

Having found that the admission at trial of Moore's custodial statement violated his right to counsel and that the state court unreasonably applied clearly established federal law by admitting it, we must now determine whether the state court's error in admitting the statement was harmless. "For the purposes of habeas review, federal courts must assess the prejudicial impact of constitutional errors under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)." *Tolliver v. Sheets*, 594 F.3d 900, 923 (6th Cir. 2010). If we are in "grave doubt" about whether the improper admission of the petitioner's statements in violation of his right to counsel had a "substantial and injurious effect or influence in determining the jury's verdict" then the error is not harmless and the petitioner must win. *Id.* at 924 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)) (internal quotation marks omitted). "This standard applies in the context of § 2254 habeas claims regardless of whether the state courts recognized the error." *Fleming v. Metrish*, 556 F.3d 520, 555 (6th Cir. 2009).

"A confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury . . . .'" *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (alteration in original).

The district court found that, even if the admission of Moore's custodial statement violated his right to counsel, its admission was harmless error. We disagree. Excluding Moore's confession to the officer, the persuasive evidence against him at trial included: testimony from Moore's girlfriend that he admitted to her that he was responsible for killing someone, but gave varying stories about who the victim was; witness testimony that Moore and Johns left the witness's apartment together on the morning Johns was killed, while Moore was armed with a shotgun; and witness testimony that Moore had a shotgun with him the night before the homicide occurred. The prosecution presented no direct evidence, only circumstantial evidence, linking Moore to the scene of the crime. And there was no evidence, other than the custodial confession, indicating premeditation or deliberation by Moore. Moore's custodial statement was significant in establishing his guilt, his link to the crime scene, and his intent to commit murder. *See Kyger v. Carlton*, 146 F.3d 374, 382 (6th Cir. 1998) ("The *Brecht* test does not say 'only errors that turn acquittals into convictions are harmful' . . . [but instead asks] 'what effect the error had or reasonably may be taken to have had upon the jury's decision.'" (quoting *Brecht*, 507 U.S. at 642–43 (Stevens, J., concurring))). Here, the confession was "probative and damaging," *id.*, and the prosecution emphasized the confession's importance in building its case of first-degree murder against Moore.

We find that the admission of Moore's custodial statement was not harmless error because we have grave doubts about whether its admission had a "substantial and injurious effect or influence in determining the jury's verdict" that Moore was guilty of first-degree premeditated murder. *Tolliver*, 594 F.3d at 924. Accordingly, we must grant Moore's petition for a writ of habeas corpus. *See O'Neal*, 513 U.S. at 436.

## IV.

We therefore **REVERSE** the judgment of the district court, **GRANT** Moore's petition for a writ of habeas corpus, and order Moore released from custody unless Michigan commences a new trial within 180 days of the date of this order.

———————————

## DISSENT

———————————

DANNY J. BOGGS, Circuit Judge, dissenting.  I respectfully dissent from the court's holding that, under AEDPA, the Michigan Court of Appeals unreasonably applied *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).  The lead opinion correctly agrees with the Michigan Court of Appeals that *Edwards* is the relevant binding Supreme Court precedent, but it incorrectly holds that the Michigan Court of Appeals unreasonably applied *Edwards* in this case.  As the Supreme Court has repeatedly reminded this court of appeals,[1] a state-court determination is to be overthrown, and habeas granted, only when a trial proceeding has gone fundamentally awry and fairminded jurists could not dispute that the outcome was constitutionally invalid. *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); *see also Werth v. Bell*, 692 F.3d 486, 495 (2012).

This decision-making principle holds just as much for a determination of whether a decision is an "unreasonable application" of clearly established federal law as it does for a determination of whether a decision is "contrary to" clearly established federal law. *See Harrington*, 131 S. Ct. at 785–86; *Yarborough*, 541 U.S. at 663–64.

Here, the exact circumstances under which Moore conversed with Officer Gardner are controverted.  It is clear that Moore asked the officer to call a particular attorney for him.  The officer did so and truthfully reported that he was only able to get an answering service.  Subsequent to that point, there are two possible interpretations of the record.  One is that Moore, in effect realizing that his designated attorney was not available, decided that it would be in his best interest to talk anyway, and that he did so. The alternative view would be that Officer Gardner, having properly observed the

———————————

[1]*See, e.g.*, *Parker v. Matthews*, 132 S. Ct. 2148, 2153, 2155 (2012) (ruling that "the Sixth Circuit overstepped the proper limits of its authority" by granting habeas relief, thus committing "plain and repetitive error"); *Bobby v. Dixon*, 132 S. Ct. 26 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250 (2010); *Renico v. Lett*, 130 S. Ct. 1855 (2010); *Berghuis v. Smith*, 130 S. Ct. 1382 (2010); *Smith v. Spisak*, 558 U.S. 139 (2009).

correct protocol to this point, decided to badger Moore into talking. The Michigan Court of Appeals, in the final reasoned opinion—with which we must deal—cited the state trial court's finding that "the challenged statement was made only after defendant initiated further conversation with the police" and found that there was "no clear error in this factual determination."

The appellate court's judgment with respect to the somewhat murky record may be right or wrong on this point. However, I cannot find that this judgment was, in the words of *Harrington*, "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786–87.

As the lead opinion correctly states, the record before us does not affirmatively show "whether Moore or the officer initiated further communication following Moore's request for counsel." Maj. Op. at 8. But the Michigan Court of Appeals, again as the lead opinion states, found "that *Moore* had initiated further conversation with the officer." Maj. Op. at 8 (emphasis added). While we have before us the same cold record that the Michigan Court of Appeals did, we possess neither the contextual insight that the Michigan Court of Appeals may have garnered from oral argument, nor that court's familiarity with Michigan procedure. And the state trial court, on whose factual findings the Michigan Court of Appeals relies, actually heard the specific testimony in question. The trial court heard Moore's claim that he made repeated requests for an attorney and that Gardner disregarded these pleas. It also heard not only Gardner's contrary testimony, quoted by the lead opinion, that Gardner "asked [Moore] did he want to talk to [the officer] and [Moore] said yes he did," Maj. Op. at 8, but also the context and circumstances attending this, at least slightly ambiguous, language.

More probing examination or cross-examination of Gardner might have elicited more specific answers to questions such as:

- Did Moore say anything indicating a desire to talk when you returned with the information that the attorney was not available?

- •   Did you ask about Moore's desire to talk because you thought he had not invoked his right to counsel?

- •   Did you ask about Moore's desire to talk only after there had been some intimation that he desired to talk?

- •   If so, what was that intimation?

In short, I agree that the record is subject to muddled interpretation. However, in the face of the flat statement by the Michigan Court of Appeals that the state trial court made a non-erroneous factual determination that Moore had appropriately initiated the conversation, I think that its judgment is not beyond fairminded disagreement. Under the Supreme Court's AEDPA jurisprudence, therefore, I respectfully dissent.