RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0020p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

LEO M. ABBY,

        *Petitioner-Appellant,*

       *v.*

CAROL HOWE,

        *Respondent-Appellee.*

No. 12-1437

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:08-cv-15333—David M. Lawson, District Judge.

Argued: November 21, 2013

Decided and Filed: January 30, 2014

Before: SUTTON and KETHLEDGE, Circuit Judges; DOW, District Judge.[*]

_____

## COUNSEL

_____

**ARGUED:** Ross W. Bergethon, BERGETHON LLC, Atlanta, Georgia, ,for Appellant.
Dean F. Pacific, WARNER, NORCROSS & JUDD, LLP, Grand Rapids, Michigan, for
Appellee. **ON BRIEF:** Ross W. Bergethon, BERGETHON LLC, Atlanta, Georgia, for
Appellant. Matthew T. Nelson, Elinor R. Jordan, WARNER, NORCROSS & JUDD,
LLP, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

DOW, District Judge. A Michigan jury found Leo Abby guilty of second-degree
murder. Abby's conviction was affirmed on appeal. Abby then filed a petition for a writ
of habeas corpus in federal court, arguing that he was deprived of his Sixth Amendment

_____

[*]The Honorable Robert M. Dow, Jr., United States District Judge for the Northern District of
Illinois, sitting by designation

right to counsel of choice and that counsel who tried his case was ineffective.  The district court denied the petition.  We affirm.

I.

On November 4, 2003, a resident of Buena Vista, Michigan, found a human leg on his lawn.  The man alerted the police, who found several plastic bags containing dismembered human limbs nearby.  All of the recovered remains belonged to Calvin Tubbs, a friend of Abby's, who had last been seen on October 27, 2003.

Laboratory technicians found Abby's fingerprints on some of the plastic bags.  They also recovered bits of Tubbs' flesh from a reciprocating saw that Abby had borrowed from his cousin on October 27, 2003.  The police did not find any other physical evidence connecting Abby to the crime.  After conducting further investigation, the police arrested Abby on November 20, 2003 and charged him with Tubbs' murder.

Abby retained attorney James Gust to represent him.  Gust entered his appearance on Abby's behalf on November 25, 2003.  Abby retained a second attorney, James Piazza, sometime in early 2004.  The record indicates that Piazza first appeared in court on Abby's behalf in April 2004.  After that point, both Gust and Piazza appeared on Abby's behalf, sometimes separately and sometimes together.

When Abby's trial began on Thursday, February 24, 2005, only Gust appeared on Abby's behalf.  Piazza was handling a different trial that was expected to last through the following Tuesday.  After the jury was selected, Abby objected "to any further proceedings until Mr. Piazza would be present."  Abby informed the court (outside the presence of the jury) that it was "his understanding when [he] retained Mr. Piazza that he would be a part of [Abby's] defense team, including whatever agreement he made with Mr. Gust and also in regards to trial."  Abby also said that he understood "that during the trial you can only have one attorney cross-examining a witness at a time.  But it's my understanding that I would have two attorneys representing me to ensure that . . . I had someone representing me from all angles."  The court indicated that it was

inclined to proceed without Piazza, but invited Abby to present case law and argument in support of his position before the State began its case-in-chief the following day.

The next morning, both Gust and Piazza appeared. Piazza explained to the court that per his arrangement with Gust, "Mr. Gust was going to handle the factual basis and [Piazza] was going to handle the legal issues and motions." Piazza indicated that he had been brought into this case only "to assist Mr. Gust"; in his view, Gust was "lead counsel." Piazza noted that "Mr. Abby is on a different plane with that." Gust reported to the court that although "there may have been some miscommunication, misunderstanding between Mr. Abby and [himself], Mr. Piazza to a certain degree," Abby's "clear and plain" wish was to have both his attorneys present at the trial. Gust proposed that the prosecutor lead with some less significant witnesses to accommodate Piazza's schedule without delaying the trial, but the prosecutor declined to acquiesce to Gust's request.

The court ultimately concluded that it was "going to start this morning," without Piazza. The court noted that the "case has been set for I don't know how many months. . . . [A]nd there never was any request made of this Court to adjourn either this matter or the other case." It also pointed out that "[b]oth attorneys in this case have acted together and/or independently on behalf of the defendant as his agent in representing him," and emphasized that the issue was first brought to its attention only the day before. The court further commented that "Mr. Gust is one of our more experienced counsel here in Saginaw," and characterized him as "effective counsel." The trial judge did not disqualify or dismiss Piazza or rule that Abby was not permitted to have two attorneys represent him. In fact, the judge had informed the potential jurors the day before that "there will be another attorney assisting in this matter on behalf of the defense, Mr. James Piazza. He is not here today."

Abby's trial lasted a total of eight days, spread over the course of a few weeks. There is no indication in the record that Piazza was present in any capacity beyond his brief appearance on the second day, notwithstanding his representation to the court that he would "be coming back down here" as soon as he was available.

During its case-in-chief the prosecution called numerous witnesses, including Abby's fiancée, Larissa White. White testified that police detectives interviewed her at her house while Abby was hiding out there, and that although he probably could hear her talking to the detectives, Abby opted to stay concealed in a bedroom. Gust also called witnesses, including Detective Frank Smith. On direct examination, Smith testified that Abby's lawyer contacted him during the investigation and conveyed to him Abby's willingness to schedule an interview with police at some point in the future. (This interview never happened because Abby was arrested the day after Smith's conversation with Abby's lawyer.) On cross, Smith testified that he interviewed White at her home, that White told him that Abby was not there, and that Abby did not reveal himself during the interview. Gust did not object to any aspect of this cross-examination. He likewise did not object to the prosecutor's comments during closing and rebuttal arguments that Abby hid in the bedroom rather than talking to the police while they were at White's house.

After the jury found Abby guilty of second-degree murder, the court sentenced Abby to 40–60 years in prison. On direct appeal, Abby raised numerous challenges to his conviction and sentence, including the two issues raised here. The Michigan Court of Appeals found "no error, plain or otherwise, in the prosecutor's comments" referring to Abby's "pre-arrest, pre-Miranda warning conduct." The court held that "a defendant's constitutional right to remain silent is not violated by a prosecutor's comment on his silence before custodial interrogation and before Miranda warnings have been given." It also held that Gust's performance with regard to the prosecutor's proper comments was neither deficient nor prejudicial.

The appeals court likewise found no error in the trial court's decision to move forward with the trial in Piazza's absence. The court recognized that the right to counsel of one's choice is not absolute, and that United States Supreme Court precedent gives trial courts "wide latitude" to balance the right against considerations of fairness and judicial administration. The court determined that Abby effectively (if not in so many words) had "sought a continuance until such time as Piazza was available to join his lead

counsel in trial," placing the matter squarely within the trial court's discretion.  The appeals court applied a four-factor test from Michigan law to assess the reasonableness of the trial court's denial of Abby's implicit request for a continuance: "(1) whether the defendant is asserting a constitutional right; (2) whether the defendant has a legitimate reason for asserting the right; (3) whether the defendant was negligent in asserting the right; and (4) whether the defendant is merely attempting to delay trial."

In applying that test, the appeals court determined that Abby had asserted a constitutional right and that he had not been attempting to delay his trial.  The appeals court nevertheless concluded that the balance of the four-factor analysis cut against Abby.  Because "both Gust and Piazza, as well as the trial court, seemed to clearly understand Piazza's limited role in defending defendant in this matter," the court concluded that "defendant's failure to assert his alleged right to Piazza's presence at trial was . . . negligent."  And as to the final factor, the court determined that Abby's reason for asserting his right was "insufficiently legitimate" because, under *Wheat v. United States*, 486 U.S. 153, 159 (1988), "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers."

The appeals court found "misplaced" Abby's "reliance on [*United States v.*] *Gonzalez-Lopez* [, 548 U.S. 140 (2006)] . . . for the proposition that it is irrelevant whether defendant in fact received the effective assistance of competent counsel."  The court distinguished *Gonzalez-Lopez* on the basis that the parties in that case had conceded that the denial of counsel was wrongful; in Abby's case, "the issue is whether the trial court's refusal to delay trial was an abuse of its discretion and thus an erroneous deprivation of counsel in violation of the Sixth Amendment."  The appeals court concluded that, "[i]n light of the reasons presented to the trial court, its decision to proceed with trial was within the principled range of outcomes and not, therefore, an abuse of its discretion."

The Court of Appeals ultimately affirmed Abby's conviction but remanded the case for resentencing on other grounds. The Michigan Supreme Court denied Abby's

motion for leave to appeal.  On remand, the trial court again sentenced Abby to 40–60 years.  Abby appealed, and the Michigan Court of Appeals affirmed in a short *per curiam* opinion that is irrelevant here.

Abby then timely filed a *pro se* petition for a writ of habeas corpus in the Eastern District of Michigan.  The district judge referred the matter to a magistrate judge, who carefully considered and rejected all of Abby's claims in a lengthy and detailed report and recommendation.  The district court overruled Abby's objections and largely adopted the report and recommendation.  As to Abby's ineffective assistance claim, the district court was "loath[] to say that the petitioner has not demonstrated deficient performance, in light of controlling Sixth Circuit precedent," *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000).  The district court concluded, however, that Abby was unable to show prejudice.  In this regard, the district court observed that Abby had at best "identified only one error with arguable merit"—Gust's failure to object to the prosecutor's comments that Abby silently hid in the bedroom rather than affirmatively talking to the police while they were at White's house.  The district court further noted that "[t]he prosecutor's argument on this point was brief," and that "there was ample circumstantial evidence tying the petitioner to the crime."  The district court also found that the state appellate court's resolution of Abby's counsel-of-choice claim was neither unreasonable nor contrary to clearly established federal law. The district court acknowledged that reasonable jurists might disagree with the trial court's decision to move forward with the trial, but concluded that this was insufficient to overcome the exceedingly deferential review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

## II.

A writ of habeas corpus may be granted with respect to any claim that was adjudicated on the merits in state court only if the adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States; (2) "involved an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States"; or

(3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). These limited bases for granting the writ "reflect[] the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of that decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Put another way, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The standard of review governing Abby's ineffective assistance claim is "doubly deferential." *See*, *e.g.*, *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013). To establish ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), a habeas petitioner must demonstrate that his legal representation "fell below an objective standard of reasonableness," as indicated by "prevailing professional norms," and that he suffered prejudice as a result. There is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. AEDPA mandates the application of a second layer of deference; we examine only whether the state court was reasonable in its determination that counsel's performance was adequate. *Burt*, 134 S. Ct. at 18. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S. Ct. at 785.

III.

A. Counsel of Choice

Abby's principal claim is that he was denied his Sixth Amendment right to counsel of choice when he was forced to go to trial without one of his two retained attorneys. He contends that the state courts misapplied controlling federal law, namely *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and *Ungar v. Sarafite*, 376 U.S. 575 (1964), by "collaps[ing] the right to counsel of choice into the right to effective assistance of counsel" and unreasonably denying his implicit request for a continuance. We disagree.

The Sixth Amendment "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Gonzalez-Lopez*, 548 U.S. at 144 (quotation omitted). This right is distinct from the generalized due process right to a fair trial. *Id.* at 147. Deprivation of the right is complete when a defendant is erroneously denied counsel of choice; he need not show prejudice or demonstrate that the counsel he received was ineffective. *Id.* at 148. As Abby acknowledges, however, "the right to counsel of choice 'is circumscribed in several important respects.'" *Id.* at 144 (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)). One of those respects is that trial courts retain "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Id.* at 152 (citation omitted). Even after *Gonzalez-Lopez*, the discretion that trial courts hold over their calendars remains vast. *See id.* ("This is not a case about a court's power to enforce rules . . . or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."). It is not limitless, however; "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Here, in denying Abby's implicitly requested continuance, the trial court noted (1) the longstanding trial date, which already had been reset several times; (2) its late

notice of the problem; (3) Piazza's failure to alert the court of the conflict or attempt to reschedule either of his cases; (4) the fact that both Gust and Piazza previously had appeared alone in Abby's case without objection or incident; and (5) the fact that Gust was an experienced attorney who was prepared to proceed with or without Piazza. The Michigan Court of Appeals reviewed the trial court's decision and concluded that it was not an abuse of discretion under the circumstances. Under AEDPA, it is this latter decision that we review. *See*, *e.g.*, *Nichols v. Heidle*, 725 F.3d 516, 538 (6th Cir. 2013). That is, we ask only whether the Court of Appeals' conclusion that the trial court did not unconstitutionally abuse its discretion was contrary to or an unreasonable application of clearly established federal law, as articulated by the Supreme Court.

As Abby's counsel conceded at oral argument, there is no Supreme Court precedent—including *Gonzalez-Lopez*—that squarely addresses the scope of the right to counsel of choice in the multiple-counsel context. Although Abby is correct that at least two circuit courts have determined that the right to counsel of choice applies to second or secondary counsel, see *Rodriguez v. Chandler*, 492 F.3d 863, 864-65 (7th Cir. 2007); *United States v. Laura*, 607 F.2d 52, 55-57 (3d Cir. 1979), the Supreme Court has not weighed in on the matter. We need not stake out a position on the issue at this time. The important point for purposes of resolving this case is that the Supreme Court has not held that a defendant's right to counsel of choice necessarily is violated when his secondary retained counsel has a scheduling conflict precluding his or her attendance at trial. *Cf. Mortiz v. Lafler*, 525 F. App'x 277, 287 (6th Cir. 2013). The state appellate court's analysis of that issue therefore was not unreasonable or contrary to clearly established federal law.

### B. Ineffective Assistance

Abby also contends that Gust was ineffective for failing to object to the prosecutor's comments about his pre-arrest silence—*i.e.*, his failure to come out of the bedroom during White's interview with the police. Abby disagrees with the district court's conclusion that he was not prejudiced by Gust's performance. He contends that there were significant gaps in the prosecution's evidence against him, such that the

prosecutor's "running theme" of his pre-arrest silence undermines confidence in the verdict.

To prove ineffective assistance, Abby must make two showings. First, he must show that Gust's "performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To do so, Abby must prove "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. And second, he must show that "the deficient performance prejudiced the defense." *Id.* at 687. To make that showing, Abby must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In addition, because we are reviewing Abby's petition under § 2254, "[t]he question is not whether [we] believe[ ] the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation omitted).

Abby has a colorable argument as to the performance prong. Several years before Abby's 2005 trial, this Court held that the use of a defendant's pre-arrest silence as substantive evidence of his guilt violated the Fifth Amendment's privilege against self-incrimination, and that counsel's failure to object to the unconstitutional use of such evidence "clearly fell below an objective standard of reasonableness." *Combs v. Coyle*, 205 F.3d 269, 283, 286 (6th Cir. 2000). Thus, at the time of Abby's trial, a reasonable attorney arguably should have objected to the prosecutor's comments about Abby's pre-arrest silence.

However, even if we assume that Gust's performance was deficient, Abby cannot demonstrate that Gust's failure to object prejudiced him. During the pendency of this appeal, the Supreme Court held that prosecutors may use a defendant's pre-arrest silence as substantive evidence of his guilt if the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 133 S. Ct. 2174, 2179, 2184 (2013). The record in this case contains no evidence that Abby invoked his right to remain silent, which means that the prosecutor's comments regarding Abby's pre-arrest silence would be permissible under *Salinas* if Abby were tried today. Any objection by Gust would be "wholly

meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission." *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring); *see also Evans v. Hudson*, 575 F.3d 560, 565-66 (6th Cir. 2009).  In *Lockhart*, the Supreme Court held that courts assessing whether a defendant was prejudiced by his counsel's errors may not consider the effect of such now-void objections.  *Lockhart*, 506 U.S. at 374 (O'Connor, J., concurring).  Consequently, in making our prejudice determination, we may not consider the effect of Gust's failure to object because we now know that such an objection would be futile in light of *Salinas*. *Id.*; *see also Evans*, 575 F.3d at 565-66.  The failure to object is the only claim of error charged to Gust, however.  Applying *Lockhart* and *Salinas* in tandem therefore precludes Abby from demonstrating prejudice based on Gust's failure to object to the prosecutor's comments and completely forecloses Abby's ineffective assistance of counsel claim.

IV.

For the foregoing reasons, we affirm the decision of the district court.