NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0635n.06

No. 12-2402

FILED
Aug 14, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GREGORY LEE BERRY,                        )
                                          )
        Petitioner-Appellant,             )
                                          )        ON APPEAL FROM THE
v.                                        )        UNITED STATES DISTRICT
                                          )        COURT FOR THE EASTERN
GARY J. CAPELLO,                          )        DISTRICT OF MICHIGAN
                                          )
        Respondent-Appellee.              )        OPINION
                                          )
                                          )


**BEFORE:    MERRITT, BOGGS, and STRANCH, Circuit Judges.**

**STRANCH, Circuit Judge.**  Gregory Lee Berry, a Michigan inmate, appeals the district court's denial of his habeas corpus petition brought under 28 U.S.C. § 2254. A jury convicted Berry of aiding and abetting first-degree felony murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony. Because the state courts' rulings on Berry's claims are not contrary to, or involve an unreasonable application of Supreme Court law, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

In the early morning of September 5, 2003, Octavio Hernandez was pumping gas into his car at a Mobil gas station located in southwest Detroit. Hernandez was standing at pump nine near the street, fifty to sixty feet away from the convenience store where Jimmy Hamood was working alone.

1

Berry and his young accomplice, Antonio Hamilton, were riding around the area in a stolen burgundy Chrysler. Berry pulled into the gas station, stopped behind Hernandez's car, handed Hamilton a .25-caliber semi-automatic firearm, and told Hamilton to rob the man at the gas pump.

With the gun at his side, Hamilton approached Hernandez and demanded money, but Hernandez did not comply. Hamilton raised the gun, pointed it at Hernandez's head at close range and demanded money a second time. When Hernandez again did not comply, Hamilton pulled the trigger. The bullet struck Hernandez in the right forehead, killing him. Hamilton did not try to steal anything from Hernandez. As he spun around, Berry was backing up the Chrysler to make a quick getaway. Hamilton jumped into the car, and the two men fled the scene. Hamilton handed the gun back to Berry. Hamilton testified at Berry's trial that he did not intend to kill Hernandez when he walked up to him, and although Berry knew Hamilton intended to rob Hernandez, Berry did not know Hernandez would be shot.

Shortly after Hernandez's murder, Berry and Hamilton disposed of the Chrysler and stole a Lincoln. Berry drove to a different gas station where he intended to commit a robbery. He stepped out of the car with the gun in his coat pocket and walked up to a man who was paying for gas at the service window. Berry spoke to him briefly, but he did not show the gun or ask for money. Instead, he returned to the car where Hamilton was waiting, but the car would not start. The men left the car at the gas station and walked to a house on Vaughn Street where Hamilton was staying.

A few hours later, a resident of the house, Shaquita Mack, overheard Hamilton and Berry conversing about a shooting at a gas station in southwest Detroit. Berry told Hamilton that "he didn't have to shoot that guy," and Hamilton said "he had to because the guy got cocky." Berry

asked why Hamilton did not get any money. Hamilton replied that he did not have time because he did not want to get caught. Berry assured Hamilton that "they had rolled off so they wouldn't get the license plate." After Berry left the house, Mack asked Hamilton why he did it. Hamilton answered that he did not know; the gun was Berry's, and the robbery had gone bad.

The next day, Mack confided in her mother about the involvement of Berry and Hamilton in the shooting. Kathy Carthron overheard the conversation and called the police.

Shortly thereafter, Detroit police took Hamilton into custody. He waived his *Miranda* rights and provided a lengthy written statement. Berry was later arrested in Tennessee and returned to Michigan for trial. Hamilton pled guilty to second-degree murder and felony firearm possession and agreed to testify against Berry as part of his plea agreement with the State.

Berry retained attorney Evan Callanan to represent him. Because Callanan was also facing criminal charges, the trial court appointed Joel Dorf to serve as co-counsel. Dorf handled the pretrial work, but Callanan appeared in court on the first day of trial, and Berry told the judge that he wanted Callanan to represent him. The court permitted Callanan to try the case with Dorf serving as co-counsel. Dorf agreed that he would not question the witnesses as long as Callanan was present. Callanan handled nearly all aspects of the trial proceedings.

The jury convicted Berry of first-degree felony murder, assault with intent to rob while armed, and possession of a firearm during the commission of a felony. Berry discharged Callanan and proceeded with only Dorf's assistance. A motion for a new trial was denied. The court sentenced Berry as a fourth habitual offender to serve life in prison without parole on the felony-murder conviction. The court also imposed a concurrent term of fifteen to twenty-five years of imprisonment on the conviction for assault with intent to rob while armed and a consecutive two-year sentence of imprisonment on the firearm conviction.

John D. Roach, Jr., handled Berry's direct appeal, raising four issues: (1) whether the prosecutor violated Berry's Fifth Amendment rights by commenting during rebuttal closing argument on Berry's failure to testify; (2) whether the trial court violated Berry's due process rights by admitting the hearsay testimony of Kathy Carthron; (3) whether the trial court abused its discretion by allowing the jury to hear testimony about the robbery that Berry attempted after Hernandez was murdered; and (4) whether Callanan rendered ineffective assistance when he left the courtroom during the prosecutor's rebuttal closing argument, fell asleep during the court's reading of the jury instructions, and failed to obtain jail records that would have shown Hamilton testified falsely when he told the jury that Berry assaulted him in jail when, in fact, Hamilton had assaulted Berry. The Michigan Court of Appeals denied the appeal in a reasoned opinion, *People v. Berry*, No. 259431, 2006 WL 2085042 (Mich. Ct. App. July 27, 2006) (unpublished per curiam), and the Michigan Supreme Court denied leave to appeal. *People v. Berry*, 727 N.W.2d 583 (Mich. 2007).

In a motion for relief from judgment filed by present counsel under MCR 6.508(D), Berry raised four issues: (1) his double jeopardy rights were violated when he was convicted and sentenced for both felony murder and assault with intent to rob while armed; (2) a jury instruction improperly allowed the jury to infer aiding and abetting murder from mere participation in the underlying felony offense; (3) the evidence was insufficient to sustain the convictions; and (4) Berry was denied the effective assistance of counsel at trial and on appeal. As to the latter claim, Berry argued that Dorf failed to object on double jeopardy grounds to the separate sentence for assault with intent to rob while armed; Callanan and Dorf failed to object to the aiding and abetting jury instruction; Callanan and Dorf deficiently cross-examined Hamilton; Dorf failed to object to Carthron's hearsay testimony, the prosecutor's misconduct in rebuttal

closing argument, and Callanan's sleeping during trial; and Roach failed to challenge on direct appeal the separate sentence for assault with intent to rob while armed, the aiding and abetting instruction, the sufficiency of the evidence, and Dorf's trial performance.

The trial court denied the motion for relief from judgment in a reasoned decision. The Michigan Court of Appeals denied a motion to remand for an evidentiary hearing and denied a delayed application to appeal because Berry failed to establish an entitlement to relief under MCR 6.508(D). The Michigan Supreme Court denied leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Berry*, 771 N.W.2d 766 (Mich. 2009). That court also denied a motion to remand for an evidentiary hearing. *Id.*

Berry then filed a petition for a writ of habeas corpus in federal court, raising all of the issues that were asserted on direct appeal and in the motion for relief from judgment. In its answer to the petition, the State asserted that Berry's procedural default barred the court from considering the merits of the double jeopardy, jury instruction, and sufficiency-of-the-evidence arguments. The district court proceeded to the merits of each claim, *see Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), and denied habeas relief. We have jurisdiction of Berry's appeal under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

In a § 2254 habeas proceeding, we review the district court's legal conclusions de novo, applying the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Moore v. Berghuis*, 700 F.3d 882, 886 (6th Cir. 2012). We may grant a habeas petition on a claim that was adjudicated on the merits in state court if the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision amounts to an unreasonable application of clearly established federal law if the court accurately identifies the governing legal rule but applies it in an unreasonable manner to the facts of the case before it. *Moore*, 700 F.3d at 886. Berry must show that the state court's ruling on a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

## III. ANALYSIS

We begin with the four claims addressed on the merits by the Michigan Court of Appeals in Berry's direct appeal. We then turn to the claims Berry raised in his motion for relief from judgment.

### A. Claims raised on direct appeal

#### 1. *Prosecutor's alleged comment on defendant's failure to testify*

Berry first contends that the prosecutor improperly commented during rebuttal closing argument on his failure to testify at trial, thereby violating his Fifth Amendment right against self-incrimination. *See Griffin v. California*, 380 U.S. 609 (1965). Our review of the trial record leads us to conclude that no constitutional violation occurred. The trial court simply misunderstood the prosecutor's argument and unnecessarily interjected a warning not to comment on Berry's right to silence. After the trial court realized its own error and permitted argument to proceed, the prosecutor emphasized to the jury that Berry had "an absolute right to say I am not guilty," that the "Constitution provides every defendant with the presumption of

innocence," and that "the burden of proving him guilty is right here at the prosecution table. I accept that responsibility."

We "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury . . . will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). The Michigan Court of Appeals determined that the prosecutor did not improperly comment on Berry's right not to testify. Instead, that court concluded that the prosecutor, during rebuttal closing argument and in response to defense counsel's closing argument, simply asserted a lack of personal interest in the outcome of the case and explained to the jury that the trial proceeding logically resulted from Berry's exercise of his constitutional rights. Because the decision of the Michigan Court of Appeals was not an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts, we agree with the district court that this claim lacks merit. *See Moore*, 700 F.3d at 886.

### 2. *Admission of hearsay testimony*

Berry next argues that the state trial court violated his confrontation rights under the Sixth and Fourteenth Amendments by admitting into evidence the testimony of Kathy Carthron even though his trial counsel objected to the testimony as double hearsay. Carthron was a difficult witness for the prosecutor and defense counsel to control. Despite questions crafted to avoid hearsay testimony, Carthron volunteered on direct examination that she learned from Shaquita Mack's conversation with her mother that Berry told Hamilton to shoot Hernandez. On cross-examination, Carthron retreated from this testimony, conceding she told the police only that Berry told Hamilton to rob Hernandez and gave him the gun to do so. Hamilton confirmed for

the jury that Berry gave him the gun and told him to rob Hernandez, but he denied Berry told him to shoot Hernandez.

The State contends that Berry's Confrontation Clause claim is procedurally defaulted because Berry raised only a state-law hearsay issue in state court. On direct appeal, however, Berry argued that the admission of Carthron's hearsay testimony violated his due process right to a fundamentally fair trial and cited two Supreme Court cases analyzing the admission of hearsay testimony under the Confrontation Clause of the Sixth Amendment, as applicable to the states through the Fourteenth Amendment. *Idaho v. Wright*, 497 U.S. 805 (1990); *California v. Green*, 399 U.S. 149 (1970). We assume that Berry sufficiently raised the constitutional dimension of his claim in state court and proceed to the merits.

The Michigan Court of Appeals did not opine on the constitutional aspect of Berry's claim. Instead, the court accepted the State's concession that admission of Carthron's hearsay testimony was error under Michigan law but held that the error was harmless because the testimony was not outcome determinative. *Berry*, No. 259431, 2006 WL 2085042, at *1–2. The district court ruled that Berry's confrontation claim lacks merit, and we agree.

The Confrontation Clause bars the admission of out-of-court testimonial statements made by an unavailable witness when those statements are offered to prove the truth of the matter asserted and when the defendant did not have a previous opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). Testimonial statements are "directed at establishing the facts of a past crime, in order to identify (or provide

evidence to convict) the perpetrator." *Id.* at 826. In deciding whether a statement is testimonial, the court asks "whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate [her] statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). If a statement is not testimonial, confrontation principles do not apply. See *Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009).

None of the challenged hearsay statements were testimonial. The statements Berry and Hamilton made to each other at the house on Vaughn Street shortly after Hernandez's murder arose during their private discussion of the crimes they had committed. Neither of them intended to bear testimony against the other at the time the statements were made. *See, e.g.*, *Crawford*, 541 U.S. at 51; *Davis*, 547 U.S. at 825. Similarly, Shaquita Mack did not intend to bear testimony against Berry when she confided in her mother about the shooting. *See Boyd*, 640 F.3d at 665 ("statements made to friends and acquaintances are non-testimonial"). Carthron candidly admitted that she decided, on her own, to call the police after she overheard the Macks' conversation.

Not only were the challenged statements non-testimonial, but Hamilton, Mack, and Carthron testified at trial and were subject to Berry's cross-examination. Thus, they were not unavailable witnesses. The district court correctly ruled that Berry has not shown how his confrontation rights were implicated by Carthron's testimony.

Even if we assume that the admission of Carthron's testimony amounted to error, the admission of that evidence did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007); *accord Brecht v.*

*Abrahamson*, 507 U.S. 619, 637 (1993); *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008). The Michigan Court of Appeals so held when it determined that Carthron's testimony was inconsistent with other trial evidence and that the other evidence alone was sufficient for the jury to find that Berry aided and abetted Hamilton in the robbery leading to Hernandez's murder. *Berry*, 2006 WL 2085042, at *2. Berry has not established that the outcome of his trial would have been different if Carthron's testimony had not been admitted. Berry is not entitled to habeas relief on this ground, as the district court properly held.

### 3. *Admission of evidence of a subsequent bad act*

Berry next argues that the trial court erred in allowing the prosecution to present evidence concerning a second attempted robbery at a gas station minutes after Hernandez was killed. The Michigan Court of Appeals affirmed the admission of the evidence as part of the *res gestae* of the charged offenses. *Berry*, 2006 WL 2085042, at *2. Berry's "conduct after the shooting was part of a continuous time sequence and displayed the same single intent and goal—to obtain money—as the attempted robbery of Hernandez. Therefore, that conduct is part of the same criminal episode or transaction that included Hernandez's murder." *Id.* In addition, the court held, the evidence was admissible under Rule 404(b) for the purpose of showing Berry's intent at the time Hamilton attempted to rob Hernandez, and the evidence was not unduly prejudicial. *Id.* Berry's "subsequent attempt to rob someone at another gas station in a similar manner as Hamilton's failed robbery of Hernandez has a tendency to make it more probable than not that [Berry] was involved in the attempted robbery of Hernandez and in the manner Hamilton described." *Id.* Berry's defense theory at trial was that he sent Hamilton into the convenience store to buy cigarettes and that Hamilton alone decided to rob Hernandez. The Michigan Court of Appeals determined that the evidence of Berry's attempt to rob another individual at another

gas station shortly after Hernandez's death made the defense theory "less probable than the prosecutor's theory that [Berry] aided and abetted Hamilton." *Id.*

Like the district court, we hold that the state appellate court's decision was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent. The admission of this "other acts" evidence was not so fundamentally unfair as to violate the Due Process Clause. *See Dowling v. United States*, 493 U.S. 342, 352–53 (1990). "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003). Because admission of evidence about the subsequent attempted robbery did not constitute constitutional error, habeas relief is not warranted on this claim.

### 4. *Ineffective assistance of trial counsel (Callanan only)*

The next issue concerns whether retained attorney Callanan rendered ineffective assistance during Berry's trial. Berry contends that Callanan left the courtroom during the prosecutor's rebuttal closing argument, slept during jury instructions, and failed to obtain jail records to show Hamilton lied when he told the jury that Berry assaulted him in jail when, in fact, Hamilton assaulted Berry.

The standard of review applicable to Berry's ineffective assistance claim is "doubly deferential." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013). Berry must demonstrate both that Callanan's representation "fell below an objective standard of reasonableness" as measured by "prevailing professional norms" and that Berry suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 667–88, 692 (1984). We "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. AEDPA then requires a second layer of deference: We ask only whether the Michigan Court of

Appeals acted reasonably when it determined that Callanan's performance was adequate and not prejudicial to Berry. *See Burt*, 134 S. Ct. at 18; *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014).

The record shows that Callanan left the courtroom very briefly at the beginning of the prosecutor's rebuttal closing argument. Shortly thereafter, the trial court admonished the prosecutor not to comment on Berry's right not to testify, but as we have explained, the trial court's intervention in the closing argument was mistaken and unnecessary. Upon returning to the courtroom, Callanan made two other objections during the prosecutor's rebuttal argument. Throughout closing argument, co-counsel Dorf was present in the courtroom to represent Berry. *See Berry*, 2006 WL 2085042, at *3.

The claim that Callanan fell asleep during trial was first raised in a new trial motion. At the motion hearing, the trial court stated that many trial lawyers close their eyes during trial, and while the court noticed Callanan's head was down and his eyes were closed, "it didn't seem that he was no more [than] just sitting there with his eyes closed. He wasn't leaning either way or doing anything else." R. 6-11 Page ID 431.

The familiar standards of *Strickland*, as adopted in Michigan cases, guided the Michigan Court of Appeals's decision on these ineffective assistance issues. *See Berry*, 2006 WL 2085042, at *3 (citing *People v. Toma*, 613 N.W.2d 694, 703–04 (Mich. 2000) (using *Strickland* standard for ineffective assistance of counsel); *People v. Rodgers*, 645 N.W.2d 294, 301 (Mich. Ct. App. 2001) (same)). The appellate court ruled that Berry could not show *Strickland* prejudice arising from Callanan's conduct because Dorf was present in the courtroom at all times; Dorf raised a concern about the court's reading of the jury instructions, and the court

addressed that concern; and Dorf moved for a mistrial based on the prosecutor's comments in rebuttal closing argument that Callanan had missed.

With regard to obtaining jail records for cross-examination, the Michigan Court of Appeals reasoned that an attorney's decision about what evidence to present is a matter of trial strategy and that the failure to present evidence constitutes ineffective assistance only when it deprives a defendant of a substantial defense—that is, one that might have made a difference in the trial outcome. *Berry*, 2006 WL 2085042, at *4 (citing *People v. Dixon*, 688 N.W.2d 308 (Mich. Ct. App. 2004); *People v. Rockey*, 601 N.W.2d 887 (Mich. Ct. App. 1999); *People v. Kelly*, 465 N.W.2d 569 (Mich. Ct. App. 1990)). The appellate court noted that Hamilton admitted to the jury that he spent time in segregation as a result of the jail altercation. *Berry*, 2006 WL 2085042, at *4. In addition, another inmate testified that Hamilton admitted initiating the fight by striking Berry in the mouth. *Id.* Accordingly, the jury heard evidence that Hamilton started the fight, contrary to Hamilton's testimony that he did not initiate the altercation. *Id.* Based on this, the appellate court determined that Berry could not establish he was deprived of a substantial defense by Callanan's failure to cross-examine Hamilton with jail records proving Hamilton started the fight. *Id.*

Under AEDPA, *Strickland* claims are difficult to establish, not only because of *Strickland*'s own "high bar," but also because of the highly deferential standard of § 2254(d). *Cauthern v. Colson*, 736 F.3d 465, 482 (6th Cir. 2013). The question to be answered on federal habeas is "not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787–88 (2011)). The Michigan Court of Appeals determined that Berry failed to meet *Strickland*'s high bar to show Callanan's ineffective assistance, and "establishing

that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 787–88. Berry has not met that standard here, and habeas relief is not warranted.

**B. Claims raised in the motion for relief from judgment**

Turning now to the claims Berry first raised in a motion for relief from judgment, we take up the State's argument that some of the claims are procedurally defaulted and that Berry has not shown cause and prejudice or a fundamental miscarriage of justice to excuse his default. *See* Mich. Ct. R. 6.508(D)(3). According to the State, we may not reach the merits of the claims concerning double jeopardy, the aiding-and-abetting jury instruction, sufficiency of the evidence, and additional claims of ineffective assistance of trial counsel.

*1. Procedural default*

On appeal from the denial of the motion for relief from judgment, the Michigan Court of Appeals and the Michigan Supreme Court each denied relief in brief form orders finding that Berry failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). Because the form orders "are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). We therefore "look to the last reasoned state court opinion to determine the basis for the state court's rejection of" Berry's claims. *See id.* The last reasoned state court opinion was issued by the trial court when it denied Berry's motion for relief from judgment.

We cannot agree with the State that the trial court's opinion relied solely on procedural default. *See* Mich. Ct. R. 6.508(D)(3). The trial court first addressed on the merits the claims asserting a double jeopardy violation, an improper aiding-and-abetting jury instruction, and

insufficient evidence. The court then turned to the claims of ineffective assistance of counsel, denying some on the merits and some on procedural grounds.

Because the state trial court did not decide Berry's motion for relief from judgment solely on procedural default, "there is no state enforcement of a procedural rule in this case to which the federal courts can defer." *Guilmette*, 624 F.3d at 292. Thus, we do "not disregard Michigan's interest in the enforcement of its procedural rules" by considering the merits of Berry's claims. *Id.*; *accord Peoples v. Lafler*, 734 F.3d 503, 511–12 (6th Cir. 2013). The district court took a similar path when it dispensed with the more complicated procedural default question and considered the merits of Berry's claims. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("[w]e do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be"); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). Consequently, we will also address the merits of the claims.

### 2. *Double jeopardy and ineffective assistance for failing to object*

Relying on *People v. Wilder*, 308 N.W.2d 112, 116 (Mich. 1981), Berry contends that his conviction and sentencing for both felony murder and the underlying predicate offense violated his right to be free from multiple punishment under the Double Jeopardy Clause. He further argues that his trial and appellate attorneys were ineffective because they failed to raise the double jeopardy issue before sentencing and on direct appeal.

Michigan law on this subject changed while Berry's post-conviction litigation was pending. In *People v. Ream*, 750 N.W.2d 536, 547 (Mich. 2008), the Michigan Supreme Court overruled *Wilder* and held that a defendant can be convicted and sentenced for both felony murder and the underlying predicate offense. Berry did not argue below, nor does he argue in this appeal, that application of *Ream* to his case violates the Due Process Clause. *See Metrish v.*

*Lancaster*, 133 S. Ct. 1781, 1787–88 (2013); *O'Neal v. Bagley*, 743 F.3d 1010, 1018 (6th Cir. 2013).

In assessing ineffective assistance claims, we may not consider any objection that "would be 'wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission.'" *Abby*, 742 F.3d at 228 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring)); *see also Evans v. Hudson*, 575 F.3d 560, 566 (6th Cir. 2009); *Desai v. Booker*, 538 F.3d 424, 428 (6th Cir. 2008). Because Berry could not assert a double jeopardy claim under current Michigan law, we "may not consider the effect of such now-void objections" in determining whether Berry was prejudiced by the performance of his trial and appellate counsel. *Abby*, 742 F.3d at 228. These claims do not provide grounds for habeas relief.

### 3. Jury instruction on aiding and abetting

Berry next argues that the trial court erroneously instructed the jury it could infer Berry aided and abetted the homicide by participating in the underlying assault. "A challenge to a jury instruction is not to be viewed in 'artificial isolation,' but rather must be considered within the context of the overall instructions and trial record as a whole." *Hanna v. Ishee*, 694 F.3d 596, 620–21 (6th Cir. 2012) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). To obtain habeas relief, Berry must show that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Berry has not met that high standard here. The single challenged sentence, when read in the context of the jury instructions as a whole, did not so infect the entire trial that Berry's conviction violated due process. *See McGuire*, 502 U.S. at 72; *Hanna*, 694 F.3d at 620–21.

The trial court instructed the jury on the elements of the offenses, on aiding and abetting, and on the intent that the prosecution had to prove in order to convict Berry of felony murder and assault with intent to rob while armed. The court informed the jury that, to aid and abet another in committing a crime, the defendant must willfully associate himself with the criminal venture and willfully participate in it as something he wishes to bring about; in other words, he must willfully seek by some act to make the criminal venture succeed. The court further explained that an act is done willfully if it is done voluntarily and intentionally and with the specific intent to do something the law forbids. The court listed the elements of aiding and abetting and instructed the jury to decide whether Berry intended to help another person commit the crimes or whether his help, advice, or encouragement actually did help, advise, or encourage the crimes. The trial court also instructed the jury that, to convict Berry as an aider and abettor, the jury was required to find beyond a reasonable doubt that Berry had the specific intent to commit the crimes himself or that he participated in the crimes knowing that Hamilton had the specific intent. The instructions were clear that Berry's mere presence at the scene of the crimes was not enough to prove that he assisted in committing them.

The sentence Berry challenges was read by the court in the course of explaining the *kinds of acts* that can constitute aiding and abetting, not in discussing specific intent. The court stated:

> Now, the defendant is guilty of aiding and abetting felony murder if the defendant performed acts or gave encouragement that assisted the commission of a killing of a human being, and it was done with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result while committing or attempting to commit or assisting in the commission of the predicate felony, here assault with intent to commit robbery.
>
> Aiding and abetting describes all forms of assistance rendered to the perpetrator of a crime. All words or deeds that might support, encourage, or incite the commission of a crime. *A jury may infer that the defendant aided and abetted the killing by participating in the underlying offense.*

-17-

R. 6-14 at 965 (emphasis added). The court followed this instruction with a discussion of malice and a recitation of the elements of first-degree felony murder and the predicate offense of assault with intent to rob while armed.

Reading the court's jury instructions on aiding and abetting in context and as a whole, the jury was properly informed of the legal principles governing their deliberations, and as we explain further below, the prosecution's evidence was sufficient to sustain Berry's convictions under those instructions. The state court's decision that the disputed sentence in the jury instructions did not violate Berry's right to a fair trial was not contrary to, nor did it involve an unreasonable application of, controlling Supreme Court law. *See Richter*, 131 S. Ct. at 786–87; *McGuire*, 502 U.S. at 72

### 4. Sufficiency of the evidence

The next issue concerns whether the evidence presented to the jury was sufficient to convict Berry of aiding and abetting felony murder. He denies the evidence demonstrated he possessed the requisite mental state for murder or that he knew Hamilton intended to commit murder. Berry relies on Hamilton's testimony that he did not intend to kill Hernandez when the attempted robbery began and that he shot Hernandez only because he was nervous, he had not handled a gun before, and Hernandez refused to cooperate with his demands.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Viewing the evidence in the light most favorable to the prosecution, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006). This standard "must be

applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

Michigan law provides that the elements of first-degree felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm will be the probable result (i.e., malice); (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999). "The facts and circumstances of the killing may give rise to an inference of malice," and "[a] jury may infer malice from the evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id.* "Malice may also be inferred from the use of a deadly weapon." *Id.*

Michigan law further provides that aiding and abetting encompasses all forms of assistance given to the perpetrator of the crime, including all words or deeds that might support, encourage, or incite the commission of the crime. *Id.* at 135. To convict on an aiding and abetting theory, the prosecution must prove beyond a reasonable doubt that (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement to assist the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *Id.* The jury is permitted to infer an aider and abettor's state of mind from all of the facts and circumstances. *Id.* Factors that the jury may consider include a close association between the defendant and the principal, the defendant's participation in planning or executing the crime, and evidence of flight after the crime. *Id.*

The state court determined that the prosecution met its burden to produce evidence sufficient for "*any* rational trier of fact" to find "the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Viewed in the light most favorable to the prosecution, the evidence showed Berry instigated the attempted robbery of Hernandez by parking the stolen Chrysler behind Hernandez's car, handing Hamilton a loaded semi-automatic handgun, and directing him to rob Hernandez. After Hamilton shot Hernandez, Berry drove the vehicle to flee the scene, again took control of the gun, and drove to another gas station in a different stolen car, where he attempted a second armed robbery. The jury could properly infer Berry's malice from the evidence showing he introduced the use of a deadly weapon and intentionally set in motion a force likely to cause death or great bodily harm. *See Carines*, 597 N.W.2d at 136. Considering Berry's leadership role, his active participation, and his evidence of flight from the scene after Hernandez was shot, the jury could infer that Berry possessed the necessary intent to willfully and wantonly create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. *See id.* at 135–36. Under Michigan law, the jury could find Berry guilty of aiding and abetting felony murder under this standard because there was proof that Berry intended the commission of the crimes or Berry knew that Hamilton intended the commission of the crimes, even if there was no proof that Berry or Hamilton possessed the specific intent to kill. *Id.*

Finally, to the extent the evidence conflicted, a reviewing court on habeas "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). The state court's ruling that sufficient evidence

supported Berry's conviction for aiding and abetting felony murder was not contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Richter*, 131 S. Ct. at 786–87; *Jackson*, 443 U.S. at 319; *Carines*, 597 N.W.2d at 136.

The Supreme Court's recent decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014), does not alter our analysis. There the Court held that "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun" and also held that the aiding-and-abetting conviction "requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." *Id.* at 1248–49. "[T]he intent must go to the specific and entire crime charged"; so, for example, in *Rosemond*, to the full scope of a § 924(c) violation—predicate drug crime plus gun use. *Id.* at 1248. The Court explained that, "[t]o aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" *Id.* (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).

The Supreme Court did not state whether the principles explained in *Rosemond* apply retroactively to convictions that are final under state law. Even assuming without deciding that *Rosemond* applies here, the trial evidence supported the jury's determination that Berry possessed a state of mind extending to the entire crime, including the necessary intent to aid and abet felony murder and to aid and abet assault with intent to rob while armed. Habeas relief is not warranted on this claim.

### 5. *Ineffective assistance of Callanan, Dorf, and Roach*

The final issues concern whether Berry's attorneys rendered ineffective assistance. We again apply the "doubly deferential" standards of § 2254(d) and *Strickland*. *See Cauthern*,

736 F.3d at 482. The point is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland*'s standard. *See id.* And as the district court pointed out, Berry is not entitled to an evidentiary hearing on any of his ineffective assistance claims because the federal courts may consider only the record that was before the state court when it adjudicated the claims on the merits. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Berry cannot prevail on the remaining ineffective assistance claims because the underlying issues lack merit. *See Moore v. Mitchell*, 708 F.3d 760, 777 (6th Cir. 2013). Callanan, Dorf, and Roach were not ineffective for failing to challenge the aiding-and-abetting jury instruction because that instruction did not permit the jury to infer aiding and abetting murder from mere participation in the underlying felony offense. Dorf was not ineffective for failing to obtain jail records to cross-examine Hamilton because Callanan handled Hamilton's cross-examination and also produced defense witness testimony to demonstrate Hamilton lied about who started the jail assault. Jail records were not necessary. Dorf was not ineffective for failing to object to Carthron's testimony because Callanan made the objection. And because the prosecutor did not improperly comment during closing argument on Berry's right to silence, Dorf was not deficient for failing to challenge the prosecutor's remarks.

The other ineffective assistance claims are also without merit. We defer to the state court's finding that Callanan was not asleep during trial; therefore, Dorf was not deficient for failing to bring this matter to the court's attention. Finally, Berry argues that appellate attorney Roach should have challenged the sufficiency of the evidence on direct appeal, but that claim would not have been successful in light of the trial record, and appellate attorneys are not required to raise all claims desired by a defendant "if counsel, as a matter of professional

judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *accord Caver v. Straub*, 349 F.3d 340, 344 (6th Cir. 2003). Berry argues that Roach should have challenged the effectiveness of Dorf's performance, but Dorf made appropriate pretrial motions, he was available throughout trial, he raised an issue about the jury instructions, he filed and argued the new trial motion, and he handled the sentencing hearing. The record fails to demonstrate that Roach could have successfully attacked Dorf's performance at any point in the trial proceedings. *See id.* We are unpersuaded that the state court's decisions on these issues were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *See Richter*, 131 S. Ct. at 786–87.

## IV. CONCLUSION

For the reasons stated, Berry's claims fail on the merits, and we deny federal habeas relief. We affirm the judgment of the district court.